Good morning, Counsel. Good morning, Your Honor. May it please the Court, Andy Weiner for the Commissioner of Internal Revenue. I will attempt to reserve four minutes for rebuttal. All right. Please keep your voice up. Certainly. The tax court's decision in this case cannot stand unless the subject matter of taxpayers' contracts for the sale of individual homes includes all the homes in the developments that they developed in the tax years at issue. Taxpayers deferred more than $800 million that they received from such contracts in still such time as they had incurred 95% of the cost of the development, including the cost to build the other homes in the development. The tax court found that the subject matter of the contracts in this case, which is the basis for applying the completed contract method, includes the house, the lot, the improvements to the lot, and the common area improvements, but specifically does not include the other homes and other lots in the development. The tax court did not appreciate the taxpayers' method necessarily includes the other lots and the other houses, perhaps because taxpayers hid that fact from the court or at least did not acknowledge it. Counsel, was that issue fairly joined before the tax court, the issue of whether or not completion of all the homes was a correct method of deferring the taxes? Was that issue precisely joined? That issue, Your Honor, was precisely raised, both before, during, and after the trial. Now so tell me in the I thought there was a hypothetical raised and that was the premise upon which the proceedings were to proceed. And so tell me where, for the first time, the precise issue regarding inclusion of the entire development was raised by the government as an issue that was to be decided in the tax court. To respond to your last question first, Your Honor. All right. The first time that it was raised in the record is actually in the commissioner's motion for summary judgment, which was filed in, I believe, March of 2012. Now the commissioner also squarely raised it in its pretrial memorandum and specifically in its post-trial briefing. Its opening brief includes a section that's specifically entitled, Taxpayers Misapplied the Use of 95% Completion Test by Applying it on a Development-Wide Basis. I'm paraphrasing, but that is. Okay. So would you point me precisely in the record to where the issue is raised in your motion for summary judgment or it's raised in your pretrial memo and where it's raised in your post-trial memo? Certainly, Your Honor. In terms of the motion for summary judgment, it was raised on pages 19 and 20. In terms of the post-trial briefing, our pretrial memo, I'm sorry, it's raised in our second supplement excerpts of record on page 186. In our opening statement at trial, it's raised at, again, our SSER at 193. In our post-trial opening brief, it's raised at SSER 199 to 201 is the section that I referenced. SSER 190? 199 to 2001 is the section that I referenced in which is entitled Petitioners Misapplied. 199 to 2001. I'm sorry, 199 to 201. I apologize, Your Honor. Okay. And the opening is SSER as well or S-E-R? S-S-E-R. Okay, 193. 191 to 201. No, the opening. You said. Oh, I'm sorry. The SSER 193. Okay, all right. And then, I'm sorry, and then, yeah, I'm sorry. And I believe that we raised it in our reply. But now to turn back, Judge Rawlinson, to your first part of your question, which was a reference, I believe, to the April 2011 letter. Right. In which the Commissioner sought to amend its answer because it had not raised the 481A adjustments that would, that are necessary in order to capture all the revenue or deductions when a change in accounting method occurs. And in working through that issue, the hypothetical was posed as to that the Commissioner responded to. Now, at that point in the litigation, the taxpayer, the Commissioner had issued notices of deficiency and final partnership administrative adjustments determining that taxpayers were improperly deferred income. Now, at that point, the Commissioner had believed that the basis of that deferral was the common area improvements and had not, through discovery, discovered that the real basis of the deferral here was not the common area improvements in the development, but all the other houses and lots that had yet to be built. And so, at the time that it had responded to that hypothetical, it responded, that hypothetical doesn't say anything about other houses and lots. That hypothetical talks about the total allocable contract costs as being the costs of the house, the lot, the improvements to the lot, and the common area expenses, which is what the tax court found, and the Commissioner does not dispute that that's what the subject matter of the contract is. But what the hypothetical does not present is the issue that we are here on now, which is, what about the other houses and lots in the development, which, at that point, the Commissioner didn't know that that's what taxpayers were doing in terms of calculating the 95 percent completion test. Why wouldn't the Commissioner know that? Why didn't the Commissioner know that? Well, Your Honor, this is why I have had no contact with the revenue agents in this case. I can't speak directly to what it did know and didn't know. I have the records going. You said the Commissioner didn't know, and I'm asking you, why is that true? Well, Your Honor, I think that if you look at the stat notices, again, the notice of deficiency and the FPAAS, the Final Partnership Administrative Adjustment, those reference schedules M-1 and M-3, which are basically schedules that certain taxpayers must acquire, discrepancies between book accounting and taxpayer accounting. It also references IDRs, informal document requests, that the taxpayers had provided through the administrative process. Now, those IDRs. We're very familiar with these terms. What's an IER? IDR, informal document request. And so if you look at that, those were the two things that the Commissioner had cited in its determinations that taxpayer had improperly deferred income. And if you look at the M-1s and M-3s, and if you look at the IDRs, which are in the record, Your Honor, under I believe it's exhibits, I believe it's 17 through 26 of the record, and the taxpayers, the tax returns are preceding that. I believe that they're like 8 to 17. But if you look at that information, there's no, there isn't enough there to figure out exactly what taxpayers were doing in terms of including other houses and lots. And then, Your Honor. At what point did the Commissioner become aware then that the taxpayers were including then all of the homes in the development in this calculation? When did that become apparent to the Commissioner? When taxpayers were going through the discovery that included their, the track pie spreadsheets, which is how taxpayers accounted, kept a. Say that again in English, please. I'm sorry. Yeah, I'm sorry. When taxpayers were going through the accounting spreadsheets that were, I'm sorry, when the Commissioner was going through the accounting spreadsheets. All right, let's start again. Sorry. Question. What did the Commissioner see, and when did he see it, so that he learned what Shea was doing? All right? Yes. At the very end of 2011, Your Honor. Why not until then? Because the taxpayers, because the Commissioner had not gotten and had not understood exactly how taxpayers were applying the use and 95% completion test until that point, Your Honor. But this was before the trial, right? Well before the trial. The trial was in July of 2012. And I'm saying that the Commissioner had determined in late 2011 through discovery. This is a discovery. It facilitates refining the party's positions. The Commissioner had determined the taxpayers had improperly deferred income. Now, the basis of that was something that it incurred. Wait a minute. You're saying that the Commissioner didn't know that Shea wasn't paying the right amount of taxes until 2011. But he'd already issued a notice of deficiency for several years. He thought then that Shea wasn't paying the right taxes, right? So you can't, how can you square the fact that the notice of deficiency claims that Shea wasn't paying the right taxes with the claim that, well, we really didn't know and the Commissioner didn't understand until 2011. There's something missing here. Your Honor, I understand your question, and here is my best answer to it. The Commissioner determined the taxpayer doesn't properly. The Commissioner determined that Shea wasn't paying the right amount of taxes because the Commissioner had the idea that the only way to pay the right amount of taxes was to recognize the income the minute each house was sold, regardless of the common area's cost, right? And he stuck by that and said, not only that, but the common area, my secondary position is a common area is a secondary matter, shouldn't even be considered. That was the basis upon which the Commissioner started this whole proceeding and took Shea to trial, right? Then you're telling me that in the middle of this trial, the light goes on, and for the first time the Commissioner says, oh, this is really what Shea's doing. He didn't know what Shea was doing when he issued the notice of deficiency. Shouldn't he have done a little investigation before then? Your Honor, as to whether the Commissioner should or should not, one can debate. But the question is, is the taxpayer ---- Wasn't that the basis of the Court denying the motion to amend, that you should have done this before? No. The motion to amend the answer, Your Honor, was not having to do with this particular issue. The motion to amend the answer was to assert a 41A adjustment. Now, I grant you that the Commissioner had initially the Commissioner's theories on which it issued the stat notices. Have been abandoned. Have been abandoned. I do not argue with that at all, Your Honor. The point is, is that in the process, the Commissioner had a conception as to what the taxpayers were doing in this case, and then in the course of discovery, which is what discovery is for, the Commissioner discovered the taxpayers were, in fact, doing something in addition. And so the Commissioner said, listen, we think you should exclude the common area improvements, but even if the common area improvements are part of the subject matters of each of the contracts, in any event, taxpayers should not be applying the use and 95 percent completion test on a development-wide basis. That's the issue that I'm curious as to where, when that was brought before the Commissioner. Because the Commissioner did not discuss that issue in detail in the decision. There was one reference to it for one small period of time. And I looked, I thought you said in the motion for summary judgment was ER 19 through 20, but I didn't see any. Go ahead. I'm sorry, just to respond. It's pages 19 and 20 of the motion for summary judgment. Where is that in the record, though? It's in the record. It's not in the excerpts of record, Your Honor. Okay. So we can, well, we don't have access to that. So in the pretrial memo to SCR 186, what specifically did you say about this particular issue? In the pretrial memo, Your Honor, we say, and I quote. That's 186, right? 186. I quote, The regulations require petitioners to apply the 95 percent completion test to each individual contract for the construction and sale of a home. And, and I quote again, petitioners' application of the 95 percent completion test is not supported by the regulations. Now. Where do you say that he should be applying 95 percent completion test to the amenities cost, the community cost? You don't say that. You say a conclusion, you throw a conclusion out there, he's not complying with the regulations, but you don't really zero in on the issue that the proper way to apply the 95 percent rule is cost of house and cost of community. Your Honor, well, again, I think that, first of all, I think if you read the context in which we, the broader context in which we made the argument in our pretrial memo, I think it's there. If you look at the summary judgment briefing, our opening statement at trial, the point being is that taxpayers had in their petition, in their petition to the tax court, taxpayers had described the subject matters thus. Subject matter petitioners' home construction contracts with its customers include the home, the residential lot, and any promised or otherwise required common improvements. Now, if that's the subject matter of the individual contract, and if, as all the parties now agree, you have to apply the completed, you have to apply the test on a contract-by-contract basis, what we're saying is that taxpayers didn't do that. They didn't apply the test on a contract-by-contract basis because they included all the other houses and lots that they were developing in the development. On one SCR, SSCR 193, there are four separate pages on that. Which page are you relying upon in your opening that alerted the tax court to this issue? I could get that. I could read you the quote that I have, if that would be helpful, or I could go and figure out exactly which of the four pages. Read me the quote. I'll see if I can find it on here. Thank you, Your Honor. Petitioners' deferred, sorry, petitioners' deferral runs contrary to the code and regulations because petitioners deferred income until they incurred 95 percent of all the costs of the development. This includes the cost to build all of the houses and all of the common improvements in the development. Right. But that was your primary argument about the improvements being included. I didn't see where you segmented out. Sorry, Your Honor. Sorry. But it encompasses actually both, Your Honor. It says this includes the cost to build all of the houses. And so, again. They would not defer any income from their home sales until they sold the 95th house. Then my follow-up question is what evidence was presented to the tax court to bolster your argument? How did you present evidence to the tax court that, in fact, the taxpayer did use that accounting methodology? If you look at the stipulation, stipulation I believe in the excerpts of record from 390 to 400, Your Honor, it says that taxpayers included, taxpayers calculated the 95 percent completion test using as the numerator all the costs that they had incurred in the development and using as the denominator all the budgeted costs. And those costs included in the numerator the costs of built and unbuilt houses. But was that a precise argument? That also includes the common areas, which was one of your main arguments. So that's all kind of jumbled together in that particular statement. My concern is whether or not the tax court was given the opportunity to rule on this precise issue. Well, speaking to that point, Your Honor, and I see I'm running late. The tax court not only acknowledged the commissioner's argument on its face on page 81 of the opinion, which is also page 81 of the excerpts of record, but it erroneously rejected it, failing to appreciate that what taxpayers were doing was including all of the houses and lots. In one breath, the tax court said that the subject matter doesn't include the other houses and lots in the development, and in the next breath says that taxpayers were allowed to the taxpayer's method was still okay. And that you cannot, I'm sorry, let me try again, because in one breath, taxpayers, the tax court says that the subject matter of each contract is, does not include the other houses and lots in the development, but at the same time says that taxpayers were allowed to apply the use of 95 percent completion test on a development-wide basis, which necessarily includes all the houses and all the lots in the development. I thought the tax court said there had been no, that whatever. I think the tax court acknowledged that that would be an inappropriate method of deferring the taxes, but that there was no evidence that it happened in the year in question, the years in question. Your Honor, I believe that you're referring to one of the taxpayers in 2002 had not calculated the use of 95 percent completion test using costs at all. It had just strictly said, and I believe this is slightly earlier, probably a few pages earlier in the opinion, what the taxpayer in that case had done was just said, how many houses have I completed? Let's say it's 100 house development. I've only completed 70 houses, and so I'm saying that you haven't gotten to 95 percent because 70 is, 70 houses in the numerator, 100 houses in the denominator, that's 70 percent. The tax court said that's wrong. You have to calculate the use of 95 percent completion test on the basis of costs, not on the basis of houses. But at the same time is that the tax court goes on to, in its opinion, squarely address the argument that the commissioner had made and erroneously rejected it. All right, counsel, we'll give you a couple of minutes for rebuttal. I appreciate that, Your Honor. So you don't think it's necessary to remand and have a retrial on any factual issues? To address your point, Your Honor, just quickly, no. We have asked in our brief for a remand because the tax court, because it erroneously rejected our argument that taxpayers can't apply the test on a development-wide basis, never actually calculated what the test would yield if applied correctly. So it should be remanded. There's no necessity for any further factual development? Well, Your Honor, taxpayers have raised the fact that, well, if we can't defer on the basis of using other houses, maybe we can defer on the basis of the use of the common area improvement. That's not the question. Would there have to be a factual, would there have to be presentation of facts, if this case were remanded on the issue that you have raised on appeal? In terms of calculating the 95 percent prong of the test, absolutely not, Your Honor. So you think the information to calculate that is already in the record? Yes, Your Honor. All right. Thank you. Maybe counsel for the taxpayer can address that issue. Thank you, Judge Rawlinson, and may it please the Court. This Court can affirm the judgment of the tax court on either of two independent. Do you want to state your name for the record? Gregory Gar, Your Honor. This Court can affirm the judgment of the tax court on two, either of two independent grounds. First, that the tax court properly found after the trial in this case that Shea's method of accounting clearly reflects income. And second, independently, the Court can conclude that the Commissioner has failed to properly propose an alternative method of accounting that Shea should have used. And I think it's very important to keep those two separate issues distinct here. The first question of whether Shea's method of accounting properly reflects income goes to what was tried below. What is the subject matter of the contract? Did the tax court properly conclude that the subject matter of the contract included the development in its entirety? And that's exactly what the tax court found on page 80 of the excerpts of record. It stated that the subject matter of the contract was the development. And it recognized. But was that correct as a matter of law, that the subject matter of the contract is the entire development? Is that correct as a matter of law? It's correct, Your Honor. As a matter of law? Well, Your Honor, it's a factual determination. I mean, that's what the tax court ---- what is the subject matter of the contract is a factual finding. The tax court recognized that. The Commissioner hasn't appealed that. Now, central ---- If the regulations define contract, the tax court can't define contract differently than the regulation does, can it? Well, this isn't a question about interference with the regulation, Your Honor. It's undisputed that the contracts in this case are home construction contracts and we fit within that. I mean, I think what Your Honor is going to is what is the contract. And we had a trial on that below. And what the tax court concluded was the contract includes is not just the sales and purchase contract. It includes all the documents referenced in the contract. That's the public reports, the conditions and restrictions, the CCRs, the maps and plats. The tax court made a finding on that on page 55 of the excerpts of record that the Commissioner has not challenged on appeal. And when you think of the contract as including everything, the public reports, the maps and plats that identify each resident and lot in the development of the community, then it makes perfect sense to conclude, as the tax court did on page 80, that the subject matter of the contract, the subject matter, includes the development in its entirety. Now, that was Shea's position below, and the tax court recognized that at page 48 and 63 of its decision, excerpts of records 48 and 63. The tax court recognized in its opinion on pages 20, 26, and 28 that Shea's method of accounting included all of the costs from the other homes, the costs of constructions. So the notion that the Commissioner is trying to float in this court, that the tax court was somehow bamboozled, that Shea's method of accounting was to take the development in its entirety, all the costs, is simply incorrect. We had a trial about that. Shea presented expert testimony. Yes, Your Honor. Ginsburg. On page 80, continuing to page 81, the tax court said the contract does not include the houses and lots other than that which is purchased. So isn't that inconsistent with the concept that the contract includes all of the homes in the development? No, Your Honor, because as you carry over to 81, what the tax court said, and I think this is critical. Because the government wants you to focus on the first part of that sentence. But the second part says, but the subject matter of each individual house still includes the development or phase of development and its common improvements. And then if you go to the footnote to that very paragraph, it says the subject matter of the contracts includes the developments. And that's because there's a difference between the contract and the subject matter of the contract. We've explained in our brief that the law recognizes that difference in many different respects. And, again, and the commissioner wants you to say that the tax court only found that the subject matter of the contract was included the common amenities. That's not incorrect. The tax court found, and it's on 80 to 81, that the subject matter includes the development. That's why we had a trial. Shea's position below, and it presented expert testimony on this document's video, was, look, we plan, build, and develop an entire community. People aren't just purchasing a home, the sticks and bricks. They're purchasing a place in a community with a distinct lifestyle. Let's suppose that there are 100 houses in the community. And Mr. Smith buys house number 50. And all the community costs are put in. And for some bizarre reason, nobody buys any more houses for a year. Now, if all the community costs are in, does that mean that Shea will not recognize Mr. Smith's sale until those other houses are sold and they may never be sold? Right. So, Your Honor, let me answer that in a few different ways. First, that didn't happen in any of the representative developments in this case. So the tax court didn't present that situation. Second, as a practical matter, what happens in that situation is that Shea adjusts its budgets for the community so that it would recognize its income earlier. And third, also as a practical matter, that situation isn't going to rise, because the common improvements includes not just the golf courses, the parks, and the clubhouses, but all the infrastructure that's necessary for the houses, the sewers, the roads, and everything. So in the event, and again, it didn't happen in this case, you've got half of a community that's not being constructed, costs aren't going to be deferred out that long. I mean, the tax court's decision here was very careful. It said, look, I'm looking at the facts and circumstances of this case, and I'm not saying that developers have a blank check to defer out indefinitely. I'm not saying I'm not allowing unreasonably long delays, but I'm allowing it on the record in this case. And the commissioner hasn't challenged a single finding that the tax court made. Now, the other side of this case, and it's a completely sufficient basis for this court to affirm, is that the commissioner has to come forward and propose its own method of accounting. 26 U.S.C. 446B obligates the commissioner not just to say that your method, taxpayer, is wrong, it doesn't clearly reflect income, but here's the method you should use, and here's how we got to the number that we're telling you you underpaid in your notice of deficiency. And on that, the tax, the commissioner's position below, and it made clear throughout, was that you have to, you have to, the method of accounting is the subject, the contract, the subject matter of the contract is limited to each house, the sticks and bricks of the house, and that's it. And that's exactly right, Your Honor. That's it. That was the most extreme position they could take. They swung for the fences below. What's that citation, 26 U.S. Code section that requires? 446B, Your Honor. 446B. Right. And then I would also refer you to the Dayton-Hudson case. It's out of the Eighth Circuit, but the commissioner hasn't disputed that it has the correct analysis. Well, the Eighth Circuit doesn't bind us. No. If the statute itself doesn't say it, I wouldn't be inclined to defer. Well, Your Honor, the tax court said it at page 42 of its opinion. That it was relying on Dayton? Well, no. The proper analysis is that the commissioner has to come forward and propose its own method. And the one it proposed below. Can you give me the citation again? To the record? No, to the code. 26 U.S.C. 446, which says that the commissioner has to come forward and propose a method that clearly reflects income. And as the case is, I mean, not just Dayton-Hudson, but the tax court has recognized that in the Golden Gate, Litho v. Commissioner case. I believe, if I understood Mr. Wiener right, that they're now proposing a proper method of accounting, which would be the houses sold and all the community infrastructure without counting the houses that haven't been sold or were sold later. That's exactly right. So that's a brand-new method. The first time that they've given it. Well, what's wrong with that? I mean, that might make sense. Well, Your Honor, what's wrong with it most fundamentally is we had a trial below. They had to put in their position below. They made their position. If you could look at Your Honor's case, Ecological Rights Foundation, what you said there was is that a party can't try one position below, come to appeal, raise a new position, and ask for a retrial. But the opposing counsel said that it was raised. I just call your attention to ER-78, where the tax court said we note that SHLP admittedly applied the 95% completion test in 2002 and 2003 by comparing the number of homes closed in escrow in the development to the number of homes projected to be built in the development. This calculation was an incorrect application of the completed contract method of accounting. Right. So doesn't the tax court acknowledge there that if, in fact, Shea Holmes used the as opposed to the number of homes that had actually been completed, that would be an incorrect application of the law? No, because the key to that sentence, Your Honor, is the number. He was right. You can't just take the number of homes and the budget and the number of homes. So you have to look at the cost. Not the budget. It's the complete. It's the number of homes completed. Oh, that's right. But it's the number. It was wrong to look at the number. You have to look at the cost. And the way that Shea did it, and again, the tax court reckoned. But that's what the tax court said. The tax court said if you compare the number of homes closed in escrow in the development to the number of homes projected to be built, that would be an incorrect application of the law. Because it's not taking into account all the costs. It's not about just the number of homes. It's all the costs. And that's the way that Shea tracked it for virtually all of its developments with the exception of that one. And the tax court recognized that on pages 20, 26, and 28. The tax court had no problem recognizing Shea's position. And the tax court agreed with it. The tax court couldn't have agreed with Shea unless it recognized. It disagreed with Shea in terms of the calculation in 2002 and 2003. That limited one. And we haven't challenged that, Your Honor. But I'm just saying the concept, the tax court recognized that a test that was used by Shea in 2003 and 2002 was incorrect. Right. But that's different than the method that we're explaining on appeal, which is a development-wide cost basis. And the tax court recognized that. And that's why it found that Shea's method clearly reflected. Now, with respect to Judge Bey, with respect to your question about what's wrong with the commissioner challenging a brand-new method of accounting on appeal, well, we're going to have to have a whole new trial. I mean, the government, maybe the most telling part of it is we're not too Mr. Weiner told us we didn't have to have a new trial. It could be remanded for application of the now newly minted position. And with respect, that's just wrong. And the reason why it's wrong, Your Honor, is that their new test is, is that below they argued that the only test that mattered was the final completion and acceptance test. They said that on page SER117. That was their position. The only test that matters is final completion and acceptance. Of each house. Of each house, right. Exactly. On appeal, they're arguing, all right, well, we're going to we want to retry this. We'll acknowledge that the subject matter includes up to the common amenities. And now we're arguing that the 95% completion and use test applies. So that's a completely different test. So that in itself tells you how much the government's position has changed. And the reason why we're going to need a new trial is that the government's position is we only need to look at completion. We don't have to look at use. But the regulations tell you it's 95% completion and use. So under the government's new position, we have to go back and determine with particular amenities had been completed at that time, what particular amenities common improvements were in use. That's going to require countless factual determinations that were never made below. The evidence is not in the record below because that wasn't the government's theory below. I mean, if the taxpayer had come into this court and said, I know we made this position below. Maybe we were a little bit too extreme below. We want to come back and present a moderate position. Please remand the case back so we can present that position. So if we remand it without further factual development, then on your theory, you would win because there's nothing in the record that would support the government's position. Well, that's true, Your Honor. But this court doesn't allow litigants in a typical case. And I don't think there could be a special rule for the commissioner to raise one position below and then get an opportunity to go back and litigate another. Well, the difficulty I have, if there was an error made as a matter of law on an oval review, we get to determine whether or not we don't have to defer to the tax court decision. If we are convinced that as a matter of law the tax court erred, we can remand the case for the tax court to get it right. So that doesn't give me any heartburn to do that. Sure, Your Honor. But I think, again, you need to appreciate that there's these two separate issues. One is, did the tax court properly found that Shea's method clearly reflects  your point earlier that you're skeptical that the tax court properly reached that finding. Now, we think that the tax court's finding was right and it was supported by the evidence. But even if you disagree with that, you still have to find that the commissioner on appeal can raise a brand-new method of accounting that he never raised below and that you can send the case back and allow the commissioner, where the evidence doesn't even support it, to try to raise that position below. Well, we don't know if the evidence supports it. The commissioner says there's evidence in the record that there wouldn't have to be an additional fact finding. If that's the case, then the remand wouldn't require any additional fact finding. But you say that the evidence is not in the record. The only way that the commissioner can take that position, and please ask him on rebuttal, the only way he can take that position is if you exclude the use element of the 95 percent completion and use test, because that's what the commissioner is proposing. He's not going to look at use. Now, he said, well, you didn't look at use below, but we didn't have to. We took a more conservative position. We didn't try to delay it out further until everything was into use. But if they're going to take this new position on appeal that the method of accounting is completion and use and includes common amenities, then they're going to have to approve when each of the common amenities was in use. And there's absolutely no record evidence on this. The one thing they say about that in their reply brief is that we somehow prevented the record on use. And that's in footnote 4 of their reply brief. Those are two parts of the test. The first part says use of the subject matter of the contract by the customer for its intended purpose and at least 95 percent. So if either one of those is not met, then the contract is not completed. So the government is saying we're relying on the second prong. We're not relying on the first prong, that 95 percent of the total cost is for the houses that are completed and not the ones that are to be completed. So the use prong is not the argument that's being made by the government. Well, they want to exclude it from the case, but it's part of the test. It's a requirement that they have to show. It's part of the test, but if either one of them isn't met, then the test isn't met. So you could focus on either one of them. It's just like if you're doing ineffective assistance of counsel, you can either show that there was not ineffective assistance of counsel or there was no prejudice. And you can go with either prong of that to make your determination. I'm not sure. It's not. With respect, it's not an alternative test. And I think the illustrations show that. Why would they have the and in there if it's not disjuncted? Well, the and is, you know, the contract isn't complete until 95 percent of it is in use and the costs have been incurred. No, it doesn't say 95 percent. It said use of the subject matter of the contract by the customer for its intended purpose and at least 95 percent. Right. And so if it's not in use, you're not going to then 95. You've got to show both, Your Honor. And I think the case is. Exactly. That's my point. You have to show both. And the government is saying we're going to show the second prong that they. Right. You have to show both, not each. I mean, if it's not in use, for example, if you've got. I think we're saying the same thing in a different way. Okay. Okay. But, you know, our point is, is that as a matter of law under the regulations, they have to show use. There's no evidence in the record on use. And, you know, they have this footnote. The contract isn't complete if the sewer is working and everybody is using it, but you haven't spent 95 percent of the cost of the sewer. You have to have both 95 percent of the cost and the sewer working. Right. That's right. Or conversely, if we had incurred the cost but the sewer wasn't working or the golf course wasn't opening, then we would defer those costs. And the government's position is, oh, it doesn't matter when things come into use. And your position is you can't determine the use of each of these commonalities without further evidence. Exactly. And the government has said that this is because of a discovery shortcoming in our case. That's exactly wrong. Please look at the sites that it has in footnote 4 of its reply brief. The information it requested was about the cost of amenities. It never requested information about the use of amenities, because this had nothing to do with the government's method of accounting below. The government is asking this Court to adopt a position of, for the Commissioner only, heads I win, tails I get to go again. The Court should regret that position, reject that position. We had a trial below. The tax court properly found on the theories presented below that Shea's method of accounting was appropriate. The government can't come to this Court proposing a completely different method and try to get a do-over. Counsel, what's your response to opposing counsel's citation to the record in the pre-trial memo, the post-trial memo, and the opening that this issue was adequately raised before the tax court? So all of those sites go to whether or not the government challenged Shea's method of accounting. And we don't acknowledge that below they argued they took issue with Shea's position, that the subject matter of the contract, including the development at large. But none of that has to do with what the government's own proposed method of accounting was. And that's what's in the letter that they proposed. And that's what they had the burden to come forward with. They issue a notice of deficiency. And they didn't need to know what Shea was doing. All they needed to know was what was the Commissioner's theory of what method Shea should be using. So what should the government have put in the letter, in your view, that would have preserved this issue? The government should have said in the letter that our position is, is that the subject matter of the contract includes not just the houses and lots, but the common amenities as well. And instead, what the government said was the exact opposite thing. Look at supplemental actuals. But what should the government have put in the letter regarding the 95 percent completion? The government has abandoned the issue on amenities. So what would have put the tax court on notice, in your view, that the government was challenging the 95 percent? Here's what it should have said. It should have said, our position on the method Shea should be using is it should take the subject matter of the contract to include not only the houses and the development, but the common amenities as well. And it should use the 95 percent completion and use test to calculate when the contract is complete. And instead, what the government said below, SCR 1621 and SCR 117, is the subject matter of the contract is limited to the sticks and bricks of each lot. And instead of using the 95 percent test, the only test that applies, said this at 117 SCR, the only test that applies is the final completion and acceptance test. So your position is that the government never put the 95 percent completion test into issue before? With respect to its own method of accounting, that's exactly right. But it never argued that the Commissioner's method was to apply the 95 percent completion and use test. Did it argue that Shea's method was deficient because it did not use the 95 percent method? Did it make that argument? No. It argued that Shea's method was deficient because applying the 95 completion and use test, Shea was wrong to treat the subject matter of the contract as the entire development. Yes. But that, it made that argument. But did it also make the argument that Shea was incorrect because it included all of the homes that had not been completed? It did. And that's why it did argue that Shea's method was incorrect. And, again, it goes back to these two issues. What it didn't do was propose the new method of accounting that Shea was supposed to move to. And this goes to the heart of the notice that the taxpayer is supposed to get. The IRS issues a notice of deficiency. It tells you what the taxpayer is supposed to do and how it's supposed to do it going forward. The taxpayer has completely changed his theory about that going through this case. So just so I understand your argument, is it your position that if the commissioner fails to give an alternative method of calculation, that's fatal to any challenge to the calculation that the taxpayer has used? Yes. And the Dayton-Hudson case is the clearest example of that. It holds that. Okay. I just want to get your point. Goldengate-Litha v. Commissioner holds that. The tax memorandum cited by the tax court. And the commissioner hasn't disputed that in its brief. It's just asking for a redo. We'll see. All right. Thank you, counsel. Thank you, Your Honors. Thank you, Your Honors. There are just three points that I'd like to make on rebuttal. The first is that, of course, the commissioner, and the commissioner in pointing out that taxpayers misapplied the use of 95 percent completion test, of course it said, that is all it needs to say. Because if you correct that, then it applies the test correctly. Well, opposing counsel takes a different view. It says that you do not challenge the proposition that is incumbent upon the commissioner to actually propose an alternative calculation rate. Do you agree with that? Yes, the commissioner has to have put taxpayers on a method that clearly reflects income under the citation that my opposing counsel has cited to, 446B. However, in this case, both parties agree that taxpayers were entitled to apply the completed contract method of accounting. The question is, what's the right application of that? The commissioner said that it should apply the final completion and acceptance test because the common area improvement should be excluded. But in the alternative, the commissioner also argued that taxpayers misapplied the use of 95 percent completion test, even if they're entitled to use that. Not very clearly. Your Honor, I respectfully disagree. But the point is, is that the commissioner clearly identified what the problem with their application of the test was. But he didn't propose the alternative application which you're proposing now on appeal. Again, I respectfully disagree, Your Honor. I think the fact that the commissioner had argued that taxpayers misapplied the test on a development-wide basis and has to apply it on a contract-by-contract basis. But that was not elucidated in the end. It was a broad argument that it was misapplied. But the precise argument that Shea Homes should have, should not have deferred income until all of the houses was completed, that discreet argument was not made very clearly. Again, Your Honor. Where in the record was that discreet argument made that Shea Homes should not have until all of the houses were completed? Where in the record is that, the use of that 95 percent calculation used in your memo, your post-trial memo, your opening, or any of the arguments that were made? Where is that? Again, let me quote our post-trial opening brief, SSER 199-201. The title of the section that I just cited is Petitioners Misapplied the 95 percent completion test by taking into account the entire development. But that was basically your argument regarding the amenities. You didn't say anything about all of the homes being completed as opposed to a portion of the homes being completed. You've refined your argument now. The problem is that refinement's not reflected clearly in the proceedings before the commissioner. Let me quote what the tax court had actually said, what the commissioner's argument was with respect to this, Your Honor, on page 80 of the tax court's opinion. Respondent also contends that Petitioner's interpretation of the subject matter of the development, and thus, including the subject matter of every other past, present, and future house. Keep going. He goes on to state that a purchaser of one home has no claim to any unsold or previously sold lots and homes. And the tax court agrees with that. But, yeah, but the tax court said, but the subject matter of each individual purchase house still includes the development or phase of development and its common improvement and amenities. So the court was really addressing the argument that the commissioner made, the focal argument that you've now abandoned, that the amenities were not included. Again, Your Honor, I respectfully disagree. I think that the commissioner, again, if you look at the sites, and I think that my opposing counsel conceded this point, that we did argue that taxpayers had misapplied the use of 95 percent completion test by applying it development-wide, which includes all of the other houses and lots in the development. Let me ask you this, counsel. Opposing counsel says if we remand this case that there would have to be additional evidence taken on the use prong of the calculation regulation. What's your response to that? My response is, Your Honor, to just clarify, when I was responding on my opening argument, I said there would need to be no additional fact-finding with respect to the 95 percent completion prong. And if taxpayers want to raise the use prong on remand, then they would be entitled to say that, or they can argue to the tax court that, yeah, we might not be able to defer on the basis of the 95 percent completion prong, which is how they were deferring before, but now we want to litigate use. And if they want to be able to come up with evidence that shows that, we're entitled to discovery and they can do that. Shouldn't that have been done at trial? Your Honor. If that was your theory? No, but, Your Honor, I think that confuses the subject matter, because it's not our theory. It's their theory. Their theory is that we said that they are not entitled. That when they received, let's just step back. When they closed on a house, they receive income from the sale of the house. And so they've got the cash and they are deferring that cash from periods between one and, I think, seven years. And they have the income. And we're saying they weren't entitled to do that. Your position is, yes, on remand, the taxpayer could legitimately ask for further factual development as to the factual issue as to when the use of the common amenities was commenced. But that's their own problem. Well, Your Honor, the taxpayer never reached the issue because it rejected our theory of the fact that it was not okay to apply the ---- But your theory didn't put the issue at the trial. Your theory didn't say prove 95 percent and date of completion in order to continue not to pay the tax. If you had done that at trial, they could have entered their evidence at that trial. But you didn't raise that issue. You're raising it now. Again, Your Honor, I respectfully disagree. Here, again, the test is prescribed by regulations. We agree with that. Taxpayers agree with that. The test requires use of 95 percent completion test. We said that they're not entitled to defer income and that they were applying, they were misapplying the test on a development-wide basis. Now, taxpayers could have said, remember what taxpayers did say in response to that argument. They initially said below, doesn't matter whether you apply it on a development-wide basis or a contract-by-contract basis because the ratio is the same. They abandoned that argument. Now, what they ---- Now, they could have argued, yes, but even if we aren't entitled to defer on the basis of the 95 percent computation, we still are entitled to defer on the basis of use. Now, they could have raised that argument, and then we would have litigated it. We were saying that they're not entitled to deferral, and that determination has the presumption of correctness by operation of how these administrative procedures operate. Now, if they want to challenge that, then that is ---- it is their prerogative to be able to assert that, okay, you got us on the 95 percent, but we think that we still are entitled to some deference under use or deferral under use. If you can show use, you don't have to show the 95 percent. Is that what you're saying? It is conjunctive, Your Honor. The completion is use and 95 percent. I'm sorry, use and 95 percent completion of the contract. So if you don't show the 95 percent completion, can you meet the test by showing use? Well, again, the test is to determine when the contract is complete. So if you don't have ---- if you haven't met the use prong or you haven't met the 95 percent completion prong, then you don't have completion. All right. And so, Your Honor, just to finish my thought, and I apologize for running so far over, but taxpayers, when they applied the 95 percent completion test, never relied on use. And we said they never relied on use in their actual, like, they treated it as a mathematical formula. We're going to apply the test. We're going to determine completion of the contract by applying whether the total budgeted, whether we've expended 95 percent of the total budgeted costs of a development. And use was never a factor in that equation. Now, if they want to, in tax court, now argue that, well, if we're not entitled to apply the method the way that we applied it, but we do think we could maybe get some deferral based on use, then that's something that they need to raise and they need to litigate. And we need to be entitled to discovery on that basis. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. This court stands at recess until 9 a.m. tomorrow morning.
judges: Fernandez, Rawlinson, Bea